IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

DAVID EVERETT BOOTHROYD,　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　)　TC-MD 170206N
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
DEPARTMENT OF REVENUE,　　　　　)
State of Oregon,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)　**FINAL DECISION**[1]

Plaintiff appeals Defendant's Notices of Assessment dated January 31, 2017, for the

2011, 2012, and 2013 tax years. A trial was held in the Oregon Tax Courtroom on August 11,

2017, in Salem, Oregon. Plaintiff appeared and testified on his own behalf. Fadi Abouadas

(Abouadas) appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 11 and

Defendant's Exhibits A through D were received without objection.

## I. STATEMENT OF FACTS

A.　*Plaintiff's Employment*

Plaintiff testified that, in 2011, he worked as a senior project manager for Solar Nation,

which was headquartered in Portland, Oregon, but maintained a property in Edison, New Jersey,

where Plaintiff and other employees lived. (*See* Ptf's Ex 3.) Plaintiff lived in a large travel

trailer at Solar Nation's property in Edison. Plaintiff testified that Solar Nation built large solar

power plants. He testified that, as senior project manager, he ran the construction side of the

operation, which involved dealing with utility companies and hiring employees. Plaintiff

---

[1] This Final Decision incorporates without change the court's Decision, entered January 22, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

managed more than 60 employees. A letter from the CEO of Solar Nation[2] stated that Plaintiff's duties included "FILO (First In Last Out), Compatibility Assessment, Commissioning, Owner Training, and System turnover to the Owner/Customer." (*Id.*) The letter further stated that Plaintiff's "duties required a moderate amount of travel" and he received a "salary above the industry standard" to compensate him. (*See id.*) Plaintiff was responsible for his own recordkeeping associated with his travel. (*See id.*) If Plaintiff's expenses exceeded $30,000 he could receive reimbursement. (*See id.*)

Plaintiff testified that, in 2012, the CEO of Solar Nation was sick and Plaintiff saw the company decline. He testified that, as a result, he went to work for a competitor, Prime Solutions Inc., and moved to Danbury, Connecticut. Plaintiff sold his travel trailer and bought a motor home. The company owned a warehouse and gave Plaintiff a space for his motor home. Plaintiff testified that he was Director of Construction, and performed essentially the same job as for Solar Nation: overseeing projects and hiring employees. (*See* Ptf's Ex 4.) According to a letter from Prime Solutions' VP of Operations, Plaintiff "was frequently on the road traveling to various job sites" and his "overall compensation package was designed to ensure he was able to effectively manage his expenses[.]" (*Id.*) As with Solar Nation, if Plaintiff's expenses exceeded $30,000 he could receive reimbursement. (*See id.*)

B.     *Work Locations*

Plaintiff provided no business records showing his work locations during the tax years at issue; instead, he relied solely on testimony.

Plaintiff testified that, prior to 2011, Solar Nation had several projects in Oregon. He testified that he performed some work in Oregon in 2011 and 2012, but none in 2013. Plaintiff

---

[2] Plaintiff identified the person's title in his testimony.

testified that, in 2011 and 2012, he had a team of electricians and laborers at the Sandy Boulevard office in Portland. He testified that they installed a solar array on a building in Oregon that was finished in about May or June 2011. Plaintiff testified that, due to a change in Oregon law in 2012, construction essentially ceased, although Solar Nation maintained an office in Oregon. Plaintiff testified that subsidies were better in the Northeast and, from approximately 2009 through 2011, he and the CEO of Solar Nation tried to expand into the Northeast.

Plaintiff testified that, for nine to 10 months in 2011, he worked on 25 ALDI stores located in Perth Amboy, New Jersey, and other sites in New Jersey; two sites in Pennsylvania; and numerous sites in New York, including a large solar array at the headquarters in Syracuse. He testified that he drove to sites in a company car; he purchased fuel, but did not save receipts. Plaintiff later clarified that he used his personal car for business in 2011 and only had a company car at the end of the year. He testified that very few trips in 2011 were overnight. Plaintiff testified that he could not determine what constituted a "metro area" in New Jersey because "there is a town every five miles." He testified that, in 2012 or 2013, he had jobs for Prime Solutions in Somerset, Connecticut; Honolulu, Hawaii; and several smaller projects in New York. Plaintiff testified that he had to be finished with those jobs by January 1, 2014. Plaintiff testified that he made 20 round trips between John F. Kennedy International Airport in New York and Hawaii.

Plaintiff testified that he lived in Oregon at the beginning of 2011 and then moved to New Jersey. He acknowledged that he probably did not "normally work" in Oregon in 2011, although he lived in Portland. He testified that he worked out of Edison and Danbury. Plaintiff testified that none of his jobs lasted more than one year.

/ / /

C.      *Employee Business Expenses*

Plaintiff claimed deductions for unreimbursed employee business expenses of $12,697

for the 2011 tax year; $25,548 for the 2012 tax year; and $22,619 for the 2013 tax year. (Def's

Exs B at 1, C, D.[3]) For the 2011 tax year, Plaintiff's unreimbursed employee expenses were

comprised of a $13,313 mileage deduction based on 25,000 claimed business miles and a $1,727

meals and entertainment deduction based on a total expense of $3,453. (Def's Ex B at 3.)

Neither party provided Plaintiff's Schedule A nor Form 2106 for either the 2012 or 2013 tax

year. Abouadas testified that Defendant did not receive Plaintiff's Form 2106 for either the 2012

or 2013 tax year, so he did not know what specific items Plaintiff claimed for his 2012 or 2013

unreimbursed employee business expenses. Plaintiff testified that an accountant in New Jersey

prepared his tax returns, but he was unable to get in touch with that accountant. He testified that

he did not know what he claimed for unreimbursed employee business expenses in 2012 or 2013.

Plaintiff testified that he did not keep a daily mileage log. He testified that he could have

tried to reconstruct a mileage log, but he did not know what was required, so he did not.

Plaintiff testified that his credit card statements are his true business records. (*See* Ptf's

Exs 6-8.) He testified that he would receive his statements in January for the prior year, then he

would go through and check items to be deducted. (*See id.*) Plaintiff testified that he gave the

statements with check marks to his accountant. He provided copies of each year to the court.

Plaintiff identified as business expenses items under the following categories on his credit card

statements: "Other Store/Retail"; "Food Store"; "Dining"; "Recreation"; "Gas Station";

"Airline"; "Other Travel/Transportation"; "Auto Rental"; "Hotels"; and "Services." (*See id.*)

---

[3] For the 2012 and 2013 tax years, those are the amounts by which Defendant adjusted Plaintiff's Schedule A itemized deductions. Abouadas testified that those amounts were the net deductions claimed for unreimbursed employee business expenses after the two percent limit.

Plaintiff gave additional explanation concerning his expenses associated with business travel to Honolulu. He initially testified that his employer paid for the flights and hotel rooms, while Plaintiff paid for rental cars and meals. Plaintiff later clarified his testimony that the Hawaii project began in June, but he did not yet have his team of employees in place. He testified that he paid for his Hawaii expenses through August; then, when he realized how expensive the project was going to be, he went to the CEO and renegotiated for the company to pay for airfare and hotels. (*See* Ptf's Ex 8J-8K (airline); 8K (auto rental).) Plaintiff testified concerning some specific expenses: "Hawaiian Rent All" was for tools rental; "Kapiolani Express Auto" was a meal; and "FedExOffice" and "USPS" in Honolulu were to send documents back to Connecticut. (Ptf's Ex 8O.)

D.      *Theft Loss*

For the 2011 tax year, Plaintiff claimed a theft loss of $27,499.[4] (Def's Ex B at 2.) According to a police report filed in Secaucus, New Jersey, Plaintiff was the victim of a burglary on April 6, 2011. (Ptf's Ex 10B.) Numerous items were taken from Plaintiff's motor home and from a storage trailer located adjacent to the motor home. (*Id.* at 10C.) Plaintiff reported to the police a list of items stolen, including a television, a DVD player, a gaming console, a hard drive, a guitar, watches, silver coins, jewelry, a bicycle, and tools.[5] (*See id*. at 10E-10G.) He testified that the tools taken were personal tools that he used to repair his motor home and bicycle.

Plaintiff reported to the police a total cost basis of $23,380 for the stolen items. (*See* Ptf's Ex 10G.) He testified that was also the amount he reported to his accountant and he did not know how a cost basis of $27,499 ended up on his tax return. Plaintiff testified that the values he

---

[4] After the reductions required under the Internal Revenue Code (IRC), the theft loss deduction was $15,658. (Def's Ex B at 1.)

[5] On the police report, Plaintiff listed $2,200 in savings bonds as stolen. (*See* Ptf's Ex 10E.) Plaintiff testified that he received all of those back because they had serial numbers, so they are not part of his claim.

listed on the police report were his best estimates of fair market value. He testified that he looked up items on Craigslist to get value estimates. Plaintiff testified that the tools stolen were in "as new condition" and were barely out of the boxes.

Plaintiff testified that he never submitted a claim on his homeowner's insurance because it did not cover theft. Plaintiff provided a letter from "Warner Munro" regarding Plaintiff's homeowner's insurance. (Ptf's Ex 11.) The letter stated that Munro was the owner of a house in Portland that he sold to Plaintiff in January 2010 on contract. (*See id.*) Munro "decided to keep the Homeowners insurance in [his] name while covering [Plaintiff]. This was to ensure that the home was always covered." (*Id.*) It further stated that neither Munro nor Plaintiff filed a claim on the insurance and they never received a payout for Plaintiff's theft loss. (*See id.*) Plaintiff testified that the homeowner's insurance policy was in Munro's name only, even though Plaintiff paid a portion of the insurance premium. Plaintiff testified that he did not have insurance on his travel trailer, nor did he have insurance on his tools because he is an employee, not a contractor.

E.      *Defendant's Adjustments*

Abouadas testified that Defendant denied Plaintiff's unreimbursed employee business expense deduction because he failed to provide a mileage log to support his vehicle expenses, so Defendant could not determine where Plaintiff drove or how many miles he drove. He also questioned whether Plaintiff's vehicle expenses were deductible in any event, given that they were associated with daily transportation and not overnight travel. Abouadas testified that credit card statements are insufficient substantiation because they do not describe the items purchased, so he could not determine the business purpose of Plaintiff's expenses. He testified that Plaintiff's claimed meals were not associated with overnight travel, so they are not deductible.

/ / /

With respect to Plaintiff's claimed theft loss, Abouadas testified taxpayers may deduct the lesser of their adjusted cost basis or the fair market value of the stolen item. He testified that Plaintiff did not provide any such evidence. Abouadas testified that he sampled some of the items Plaintiff reported and found that the prices were the current costs.

## II. ANALYSIS

The issues presented are (1) whether Plaintiff is allowed any deductions for unreimbursed employee business expenses for the 2011, 2012, and 2013 tax years; and (2) whether Plaintiff is allowed a theft loss deduction for the 2011 tax year.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[6] In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *." ORS 316.012. On the issues presented in this case, "Oregon law makes no adjustments to the rules under the [IRC] and therefore, federal law governs the analysis." *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009) (looking to the IRC to determine travel expense deduction); *see Vieceli v. Dept. of Rev.*, 20 OTR 212, 216-17 (2010) (looking to the IRC to determine theft loss deduction).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Taxpayers must be prepared to produce "any books, papers,

---

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2011. The 2009 version of the ORS is applicable to the 2011 tax year, but does not materially differ from the 2011 version in the applicable sections.

records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("Taxpayers are required to maintain records sufficient to substantiate their claimed deductions"). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. Plaintiff must establish his claim by a preponderance of the evidence, which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [her] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.        *Unreimbursed Employee Business Expenses; Strict Substantiation*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise allowed under the IRC.

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of the allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable

evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A). *See also* Treas Reg § 1.274-5T(a). Taxpayers must substantiate each element of such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement * * *." IRC § 274(d).

> "To meet the 'adequate records' requirements of [IRC] section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *."

Treas Reg § 1.274-5T(c)(2)(i). "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility * * *." Treas Reg § 1.274-5T(c)(1).

Plaintiff claimed unreimbursed employee business expense deductions of $15,040 in 2011, of $25,548 in 2012, and of $22,619 in 2013. For tax year 2011, Plaintiff's total claimed deduction was comprised of a $13,313 mileage deduction and a $1,727 meals and entertainment deduction. No similar breakdowns were provided for either 2012 or 2013. Based on Plaintiff's testimony and the categories in his credit card statements, the court infers the deductions were associated with vehicle, traveling, entertainment, and miscellaneous expenses.

1. *Vehicle expenses*

Plaintiff claimed a mileage deduction based on 25,000 business miles in 2011. He may have claimed mileage deductions in 2012 and 2013, although no such evidence was provided. Plaintiff also deducted expenses incurred at gas stations for each of the tax years at issue. Most of Plaintiff's vehicle expenses were associated with traveling to job sites in New Jersey,

/ / /

New York, Pennsylvania, and Connecticut. He did not typically travel on overnight trips in 2011 and 2012,[7] and he drove to many sites in a company car, for which he purchased gas.

a. *Daily transportation expenses*

Generally, the taxpayer's cost of commuting to his or her place of business or employment is a personal expense that is not deductible. Treas Reg § 1.262-1(b)(5). Revenue Ruling 99-7, 1999-1 Cumulative Bulletin 361, provides three exceptions to the general rule that commuting expenses are not deductible:

> "(1) A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *outside* the metropolitan area where the taxpayer lives and normally works. However, unless paragraph (2) or (3) below applies, daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *within* that metropolitan area are nondeductible commuting expenses.
>
> "(2) If a taxpayer has one or more regular work locations away from the taxpayer's residence, the taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location in the same trade or business, regardless of the distance. * * *.
>
> "(3) If a taxpayer's residence is the taxpayer's principal place of business within the meaning of § 280A(c)(1)(A), the taxpayer may deduct daily transportation expenses incurred in going between the residence and another work location in the same trade or business, regardless of whether the other work location is *regular* or *temporary* and regardless of the distance."

Plaintiff did not provide evidence from which the court can determine whether any of his daily transportation expenses fall within the exceptions stated in Revenue Ruling 99-7. He gave generalized testimony about the locations to which he traveled, acknowledging that he was unsure which sites were within and without the metropolitan area where he "lived and normally worked." Plaintiff provided no evidence of travel from one work location to another. He provided no evidence showing that his residence was his principal place of business.

---

[7] Plaintiff made numerous trip to Hawaii in 2013, but he traveled by airplane. If he took his personal vehicle to the airport for those trips, he presented no evidence of it.

b.     *Substantiation*

Even if the court concluded that Plaintiff incurred deductible vehicle expenses, he did not

provide adequate substantiation of the amount of such expenses. *See* IRC § 280F(d)(4)(A)(i)

(passenger automobiles are listed property subject to the strict substantiation requirements of

IRC section 274(d)). Plaintiff did not keep a daily transportation log, nor did he attempt to

substantiate his travel through other records. His credit card statements showing purchases at

gas stations are insufficient to establish the elements required for strict substantiation. *See*

*Striefel v. Comm'r*, 105 TCM (CCH) 1621, WL 1501529 at *4 (2013) (concluding that the

taxpayer's bank statements alone did not substantiate taxpayer's vehicle expenses because they

did not demonstrate what the taxpayer "actually purchased at these establishments and to what

extent these purchases had a business purpose").

2.     *Traveling expenses*

Plaintiff deducted traveling expenses based on expenditures for airfare, hotels, car rentals,

food, dining, and "other travel" not specifically identified. The only evidence Plaintiff provided

concerning those expenses was his credit card statements and his testimony. Those statements

demonstrate purchases in New Jersey, New York, Pennsylvania, Maryland, Connecticut,

Massachusetts, Oregon, Washington, California, Hawaii, Illinois, and Florida. (*See* Ptf's Exs 6-

8.) The majority of Plaintiff's expenditures in 2011 and 2012 were in New Jersey, whereas the

majority in 2013 were in Connecticut and Hawaii. (*See id.*)

A taxpayer may deduct "traveling expenses * * * while away from home in the pursuit of

a trade or business[.]" IRC § 162(a)(2). "The purpose of IRC [section] 162(a)(2) is to

ameliorate the effects of business which requires taxpayers to duplicate personal living

expenses." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). "Consequently, courts must

determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Id.* To deduct traveling expenses under IRC section 162(a)(2), taxpayers must show that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev.*, 18 OTR 76, 80–81 (2004) (citation omitted). For a taxpayer to be considered "away from home" within the meaning of IRC section 162(a)(2), the taxpayer must be on a trip requiring sleep or rest. *United States v. Correll*, 389 US 299, 302–03, 88 S Ct 445, 19 L Ed 2d 537 (1967).

"In general, a taxpayer's home for the purposes of section 162(a)(2)—*i.e.*, the taxpayer's 'tax home'—is the taxpayer's principal place of business or employment." *Morey*, 18 OTR at 81 (citation omitted); *see also Henderson v. Comm'r*, 143 F3d 497, 499 (9th Cir 1998) (" 'home' means 'the taxpayer's abode at his or her principal place of employment.' "). "[A] person's principal place of business need not be limited to a specific location or job site. A principal place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered." *Hintz v. Dept. of Rev.*, 13 OTR 462, 467 (1996), citing *Ellwein v. United States*, 778 F2d 506, 510 (8th Cir 1985). "If a taxpayer has no regular or principal place of business, he may be able to claim his place of abode as his tax home." *Henderson*, 143 F3d at 499, citing *Holdreith v. Comm'r*, 57 TCM (CCH) 1383, 1989 WL 97400 (1989). "[T]he taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.' " *Morey*, 18 OTR at 81 (citations omitted). However, under IRC section 162(a), "any employment period in excess of one year is *per se* indefinite." *Morey,* 18 OTR at 81.

/ / /

a.    *Plaintiff's tax home*

Plaintiff testified that he is an Oregon resident and maintained a home in Oregon. Defendant did not dispute that. It is unclear whether Plaintiff takes the position that his *tax home* was also Oregon for the three tax years at issue. In 2011 and at least part of 2012, Plaintiff worked for Solar Nation, which was headquartered in Portland, Oregon, but maintained a property in Edison, New Jersey, where Plaintiff and other employees lived. Plaintiff had some work in Oregon in 2011 and 2012, but none in 2013 due to changes in Oregon law and Plaintiff's employment. Plaintiff did not provide a listing of his job sites, locations, and dates for any of the tax years at issue, so the court cannot determine the number of days that he worked in any given location. However, Plaintiff's credit card statements reveal that he spent the majority of his time in New Jersey in 2011 and 2012. Furthermore, Plaintiff's employment in New Jersey appears to have lasted for more than one year, making his employment there *per se* indefinite. On those facts, it appears Plaintiff's tax home was Edison, New Jersey, rather than Portland, Oregon, in 2011 and 2012. In 2013, Plaintiff worked for Prime Solutions in Danbury, Connecticut, and lived in a motor home on company property. Those facts suggest that Plaintiff's tax home became Danbury, Connecticut, in 2013.

b.    *Plaintiff's travel "away from home"*

In order to deduct traveling expenses including lodging, meals, airfare, and rental cars, Plaintiff must establish that he was "away from home"—meaning his tax home—on a business trip requiring sleep or rest. The expenses claimed must be reasonable and necessary.

In 2011 and 2012, most of Plaintiff's work was performed at sites located in New Jersey, with some in New York and Pennsylvania. He testified that few of his work trips in 2011 were overnight. The court finds the evidence presented is insufficient to support any deduction for

traveling expenses in 2011 and 2012.  To the extent Plaintiff traveled to more distant locations,[8] Plaintiff did not present evidence concerning the business purpose of any of those trips.

In 2013, Plaintiff's tax home was likely Danbury, Connecticut, but he took numerous business trips to Honolulu, Hawaii.  Plaintiff's business travel to Hawaii likely satisfies the standard of being "away from home" on a trip requiring sleep or rest.  The question becomes whether Plaintiff provided adequate evidence to substantiate any amount of deductible expenses.  Unfortunately, even though the court is persuaded that Plaintiff traveled to Hawaii in 2013 for business reasons, the court finds Plaintiff failed to adequately substantiate any deduction.

Plaintiff gave only general testimony about his travel to Hawaii; he did not provide a work calendar or schedule identifying the specific dates and locations of his business trips in 2013.  Plaintiff's credit card statements indicate he was in Hawaii approximately 162 days in 2013, primarily in Honolulu or nearby locations.  (*See* Ptf's Ex 8.)  However, some expenses were incurred in Hilo, Hawaii, which is on a different island than Honolulu.  (*See, e.g.,* Ptf's Ex 8K (auto rental expenses on February 27 and November 5); Ex 8N (gas expenses on November 5 and 6); Ex 8Q – 8W (dining expenses on February 26, March 30, July 30, and November 5 and 6).)  Although he did not deduct any "recreation" expenses in 2013, Plaintiff's credit card statements reveal that he made purchases at golf and country clubs on the island of Hawaii on February 26 and April 2.  (*See* Ptf's Ex 8X.)  To the extent Plaintiff traveled to Hawaii for personal reasons, such travel is not deductible as a business expense.  The court is unable to determine the precise dates of Plaintiff's business travel to Hawaii in 2013.

Without knowing the specific dates and business purpose of Plaintiff's travel to Hawaii, the court is unable to determine Plaintiff's allowable deductions for food and lodging.  Plaintiff's

---

[8] Plaintiff deducted expenses incurred in Oregon, Washington, California, Hawaii, Illinois, and Florida.

credit card statements demonstrate the following expenses incurred in Honolulu in 2013: lodging expenses totaling $5,595.55; auto rental expenses totaling $4,496.28; and parking expenses totaling $315. (*See* Ptf's Exs 8K, 8L.) If Plaintiff had adequately substantiated the dates and business purpose of his travel to Honolulu with credible work records, the court might have allowed a deduction for those expenses. *See Striefel*, WL 1501529 at *5 (allowing certain lodging deductions based on "bank statements show[ing] the date, the amount, and the location of the hotel or motel" in conjunction with a "highly credible" work calendar showing the locations and dates of the petitioner's work travel). Similarly, if the court received adequate substantiation of the precise dates and business purpose of Plaintiff's travel to Honolulu, the court may have allowed a meal deduction based on the *per diem* method of substantiation. *See id.* at *6 (finding that the bank statements were inadequate to substantiate a meals deduction and declining "to sift through the convoluted * * * documents to reconstruct for petitioner the precise amount of meal expenses he incurred while traveling away from home[,]" but recognizing the availability of the *per diem* method).

Plaintiff's remaining travel expenses similarly lack adequate substantiation for the court to allow any deduction. For instance, Plaintiff deducted various expenses identified in his credit card statements as "airline" expenses. (*See* Ptf's Exs 8J-8K.) Although the credit card statements identify the airline (*i.e.,* American, United, Hawaiian, and Jet Blue), they do not identify the location of travel, nor do they identify the specific purchase. Thus, it is unclear if a charge was for a ticket, for baggage, for meals and beverage, or for something else.[9]

/ / /

---

[9] For instance, multiple charges were less than $10. (Ptf's Exs 8J-8K.) Presumably those were not for airline tickets. Plaintiff did not identify those charges as deductible business expenses, but they are included in the same "Airline" category of Plaintiff's credit card statements.

3.  *Entertainment*

Plaintiff deducted some expenses from a category entitled "Recreation" in his 2011 credit card statements.  (*See* Ptf's Exs 6I-6J.)  The expenses were incurred entirely at golf and country clubs.  (*See id.*)  Plaintiff provided no further explanation or evidence concerning those "recreation" expenses.  Some of Plaintiff's dining expenses may also have been for entertainment purposes, but the court received no evidence of that.

IRC section 274(a)(1)(A) provides that no deduction shall be allowed for any item

> "[w]ith respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business[.]"

In other words, a taxpayer may only deduct entertainment expenses if they are either (1) "directly related to" or (2) "associated with" the active conduct of the taxpayer's business.  *See Danville Plywood Corp. v. U.S.*, 899 F2d 3, 7 (8th Cir 1990).  Even if an entertainment expense qualifies under IRC section 274(a), it must also meet the strict substantiation requirements under IRC section 274(d).  *See Harding*, 13 OTR at 461 (denying taxpayer's claimed entertainment and meal expenses for failure to adequately substantiate those deductions where "[t]axpayer's records consist[ed] of receipts showing a date, amount, receipt number, and a hand-written name or two[,]" but not "the name or location of the restaurant" or the "business purpose for the expense").  Plaintiff provided no evidence substantiating the business purpose of any entertainment or "recreation" expenses.  No deduction may be allowed.

4.  *Miscellaneous expenses*

Plaintiff identified some other various charges as business expenses, including a charge to "Hawaiian Rent All" that he testified was for tools rental and charges to FedExOffice and

USPS in Honolulu that he testified were to send documents to Connecticut. (*See* Ptf's Ex 8O.) He did not explain other expenses which were marked as business deductions, such as "Inter Island Solar Sup" and "Hy-Pac Self Storage." (*See id.*) It is unclear what was purchased and the business purpose, if any. The court finds Plaintiff failed to prove by a preponderance of the evidence that any of those charges were for ordinary and necessary business expenses. *See Cahill v. Comm'r*, 106 TCM (CCH) 324, WL 5272677 at *10 (2013) (concluding that credit card statements and "self-compiled lists" of expenses were insufficient to support a deduction for claimed business expenses because they did not provide enough information concerning what was actually purchased and to what extent the purchases had a business purpose).

B.      *Theft Loss*

Plaintiff claimed a theft loss in 2011 for items with a total cost basis of $27,500. He corrected the cost basis to $23,380, as he reported to the police and to his accountant.

IRC section 165(a) allows a taxpayer "a deduction [for] any loss sustained during the taxable year and not compensated for by insurance or otherwise." Such losses include those arising from theft. *See* IRC § 165(e); *see also* Treas Reg § 1.165-8. Theft losses are deductible "during the taxable year in which the taxpayer discovers such loss." IRC §165(e); Treas Reg § 1.165-8(a)(2). For losses other than those in respect of property used in a trade or business or for income producing purposes, the loss is limited to the amount of the loss less $100. IRC § 165(h)(1); Treas Reg § 1.165-8(c). The loss is further limited to the amount "so much * * * as exceeds 10 percent of * * * adjusted gross income." IRC § 165(h)(2)(A)(ii).

The amount of the loss is based upon "the difference between the fair market value of the property immediately before the casualty and its value immediately thereafter, not to exceed, however, the adjusted basis of the property." *Millsap v. Comm'r*, 46 TC 751, 759 (1966); *see*

*also* IRC § 165(b); Treas Reg §§ 1.165-1(c), 1.165-7(c), 1.165-8(c). In the case of theft, the fair market value of the property immediately after the loss is zero. *See* Treas Reg 1.165-8(c). The fair market value of property immediately before the loss "shall generally be ascertained by competent appraisal." Treas Reg § 1.165-7(a)(2)(i)).

In the context of theft of personal property, this court has been willing to consider other competent evidence demonstrating the fair market value or adjusted basis of property. *See Moser v. Dept. of Rev.*, 12 OTR 8, 9-10 (1991) (relying on the *Cohan* rule, the court estimated the adjusted basis of the taxpayers' coin collection, where the court found based on values listed in "coin catalogs" that the fair market value exceeded the taxpayer's adjusted basis); *see Perlmutter v. Dept. of Rev.*, TC-MD 140013D, WL 3708162 at *4 (Jul 28, 2014) (accepting as sufficient evidence the price of identical earrings sold at an auction). However, this court has declined to rely on vague and inexact estimates. *See Merck v. Dept. of Rev.*, TC-MD 130358C, WL 690727 at **2-3, 5 (2014) (rejecting taxpayer's fair market value estimates of jewelry based on internet searches and discussions with jewelers); *see Perlmutter*, 2014 WL 3708162 at *3 (rejecting the taxpayer's estimate, based on recollection, of her adjusted cost basis in two computers where taxpayer failed to produce receipts).

In order to determine the amount of a theft loss deduction, the court must be able to determine that a theft occurred, the items stolen, the fair market value of the stolen items at the time of the theft, and the taxpayer's adjusted basis in the stolen items at the time of the theft. Plaintiff reported stolen items including a television, a DVD player, a gaming console, a hard drive, a guitar, watches, silver coins, jewelry, a bicycle, and tools. The only evidence Plaintiff provided concerning the fair market values of the stolen items was a police report in which he listed the items and their estimated values. Those estimated values were based on Plaintiff's

research on Craigslist. Plaintiff did not provide any printouts from Craigslist or other websites he may have consulted to estimate the fair market values of the stolen items. He also failed to provide any receipts or similar documents establishing his cost basis in any of the stolen items. Even though the court is persuaded that Plaintiff suffered a theft loss, the court is unable to determine the amount of the loss based on the evidence presented.

## III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiff failed to prove by a preponderance of the evidence that he should be allowed any deduction for unreimbursed employee business expenses for tax years 2011, 2012, or 2013, or that he should be allowed any theft loss deduction for tax year 2011. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of February 2018.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Boomer and entered on February 9, 2018.*